UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| GERALD O'MEARA, GLORIA DOMIZIANO, and KRISTINA KRUSE | : : : : |
| v. | : Civil No. 3:16CV01840 (HBF) |
| INTEPROS INCORPORATED | : : : |

RULING ON MOTION TO COMPEL ARBITRATION and
STAY PROCEEDINGS PENDING ARBITRATION

This action was commenced on October 14, 2016, in Connecticut Superior Court by plaintiffs Gerald O'Meara, Gloria Domiziano and Kristina Kruse, former employees of defendant IntePros Incorporated. Defendant moves to compel arbitration and for a stay of proceedings pending arbitration, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), D. Conn. L. Civ. R. 7, the Federal Arbitration Act, 9 U.S.C. §1, et seq. and Conn. Gen. Stat. §52-408. [Doc. #11-1 at 1].

For the reasons that follow, defendant's Motion to Compel Arbitration and Stay Proceedings Pending Arbitration **[Doc. #11]** is **GRANTED**.

BACKGROUND FACTS[1]

1. Defendant IntePros is a staffing agency which does business throughout the United States, including in Stamford, Connecticut. Compl. at Count One ¶6. It is a Pennsylvania

---

[1] "Defendant does not concede the facts or the legal conclusions as alleged in the Complaint, but accepts the facts for the purposes of this Motion only. Defendant expressly reserves its right to dispute the facts alleged in the Complaint." [Doc. #11-1 at 2, n. 1].

1

   corporation with a corporate office in Lexington, Massachusetts. Compl. ¶5.

2. Plaintiffs were employees of IntePros at its Stamford, Connecticut office. Compl. at Count One ¶4.

3. At the commencement of their employment, each of the plaintiffs entered into an employment agreement with defendant. [Doc. #11 Aff. Daniel Hinkley, ¶¶3-5; Def. Ex. A-C].

4. The Employment Agreements contain identical choice of law and arbitration provisions.

5. Paragraph 12 of the Employment Agreements states, "Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts." Id.

6. Paragraph 15 of the Employment Agreements states,

   Arbitration. Any dispute or claims arising out of or relating to the Employee's employment or any provision of this Agreement, whether based on contract or tort or otherwise, including, but not limited to claims of sexual harassment and claims of discrimination based on race, religion, national origin, gender, age or disability, shall be submitted to arbitration pursuant to the national Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA"). Any such dispute or claim shall be heard in the AAA's Boston Office. Any issue with respect to the arbitrability of a particular dispute or to the scope of this Section shall be decided by the arbitrator. An arbitration award rendered pursuant to this Section shall be final and binding on the parties and may be submitted to any court of competent jurisdiction for entry of a judgment thereon. Notwithstanding the aforementioned obligation to arbitrate, the Employer may sue in any court of competent jurisdiction for the Employee's violation of Section 7 [entitled "Disclosure or Misuse of Confidential Information"] and/or 8 [entitled "Restrictive Covenant"] of this Agreement.

Id.

7. From mid-January to early February of 2015, plaintiffs either resigned or were involuntarily terminated from employment.[2]

8. On May 29, 2015, following their resignation and/or terminations of employment, each plaintiff filed a separate administrative charge at the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the U.S. Equal Employment Opportunity Commission ("EEOC").[3] Compl. at Count One ¶10. After receiving releases of jurisdiction, plaintiffs commenced this action which asserts seventeen claims arising out of or relating to their employment with defendant.[4]

9. O'Meara alleges: (1) retaliation in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §46a-60(4)(Count One); (2) retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-3,

---

[2] O'Meara tendered his resignation on January 16, 2015. Compl. at Count Three ¶¶46, 47 ("forced...to quit involuntarily"). Kruse's employment was involuntarily terminated on January 16, 2015. Compl. at Count Eleven ¶45. Gloria Domiziano's employment was terminated on February 4, 2015. Compl. at Count Nine ¶50; Count Thirteen ¶64.

[3] The Complaint alleges that both Kruse and Domiziano's employment was terminated in 2016; however, they filed administrative charges on May 29, 2015. See Compl. at Count Eleven ¶45; Count Thirteen ¶64; Count One ¶10. Defendant's motion states that all the plaintiffs' employment ended in 2015. [Doc. #11-1 at 3]. Plaintiffs did not challenge these representations in their opposition brief. [Doc. #15 at 2].

[4] Plaintiffs filed the Complaint in Connecticut Superior Court on October 14, 2016. Defendant filed a notice of Removal on November 9, 2016. [Doc. #1].

et seq. (Count Two); (3) constructive discharge (Count Three); (4) breach of contract (Count Four); (5) violation of Connecticut's Wage Statute, Conn. Gen. Stat. §31-72, et seq. (Count Five); and (6) unjust enrichment for unpaid earned commissions (Count Six).

10. Domiziano alleges: (1) sexual harassment in violation of CFEPA, Conn. Gen. Stat. §46a-60(8) (Count Nine); (2) sexual harassment in violation of Title VII, 42 U.S.C. §2000e-3, et seq. (Count Ten); (3) retaliation in violation of CFEPA, Conn. Gen. Stat. §46a-60(4)(Count Thirteen); (4) retaliation in violation of Title VII, 42 U.S.C. §2000e-3, et seq. (Count Fourteen); (5) negligent infliction of emotional distress (Count Fifteen); (6) breach of contract (Count Sixteen); and (7) violation of Connecticut's Wage Statute, Conn. Gen. Stat. §31-72, et seq. (Count Seventeen).

11. Kruse alleges: (1) sexual harassment in violation of CFEPA, Conn. Gen. Stat. §46a-60(8)(Count Seven); (2) sexual harassment in violation of Title VII, 42 U.S.C. §2000e-3, et seq. (Count Eight); (3) retaliation in violation of CFEPA, Conn. Gen. Stat. §46a-60(4)(Count Eleven); and (4) retaliation in violation of Title VII, 42 U.S.C. §2000e-3, et seq. (Count Twelve).

LEGAL STANDARD

  A. Motion to Dismiss Fed. R. Civ. P. 12(b)(1)

  Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a claim when the federal court "lack[s]...jurisdiction over the subject-matter."[5] Federal courts are courts of limited subject-matter jurisdiction and may not entertain matters over which they do not have jurisdiction. Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001). The plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002)(citation omitted). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court must assume the truth of the material factual allegations contained in a complaint. J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004)(citation omitted). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the

---

[5] There is a [l]ack of clarity in the case law of this Circuit (and others) as to what procedural mechanism must be employed by courts to dismiss actions in which the parties are bound to resolve (or attempt resolution of) their claims in accordance with a contractual grievance procedure, such as an agreement to arbitrate.

Cartagena Enterprises, Inc. v. J. Walter Thompson USA, Inc., No. 13 CIV. 4238 (SAS), 2013 WL 5664992, at *2, n.3 (S.D.N.Y. Oct. 16, 2013)(applying Rule 12(b)(1) "[b]ecause Plaintiffs [did] not contest Defendants' invocation" of this rule)(citing cases). Similarly here, plaintiff does not challenge the application of either Fed. R. Civ. P. 12(b)(1) or 12(b)(6).

5

party asserting it." Jordan v. Verizon Corp., 391 Fed. App'x 10, 12 (2d Cir. 2010) (quoting APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003)). "[I]n dismissing a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), a court 'may refer to evidence outside the pleadings.'" Burfeindt v. Postupack, 509 F. App'x 65, 67 (2d Cir. 2013)(quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

B. Motion to Compel Arbitration

Arbitration clauses are subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. §1, et seq. The FAA "provides that written provisions to arbitrate controversies in any contract involving commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987)(quoting 9 U.S.C. §2); see Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67-68 (2010). Under §3 of the Federal Arbitration Act, a court in which any action is pending based upon an issue referable to arbitration "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement...." 9 U.S.C. §3. Section 4 "directs a federal court to order parties to proceed to arbitration if there has been a 'failure, neglect, or refusal of any party to honor an agreement to arbitrate.'" Genesco, Inc., 815 F.2d at 844(quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)(quoting 9 U.S.C. §4)). "These provisions are mandatory: '[b]y

6

its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" <u>Id.</u> (quoting <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985) (emphasis in original)(citing 9 U.S.C. §§3, 4)).

Before compelling arbitration, a district court must decide two threshold questions: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." <u>In re Am. Exp. Fin. Advisors Sec. Litig.</u>, 672 F.3d 113, 128 (2d Cir. 2011) (citations omitted). "Courts may not...invalidate arbitration agreements under state laws applicable <u>only</u> to arbitration provisions." <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996)(emphasis in original). However, courts may invalidate arbitration agreements on the basis of "generally applicable contract defenses, such as fraud, duress, or unconscionability...." <u>Id.</u> "There is a strong presumption in favor of arbitration, and waiver of the right to arbitration is not to be lightly inferred." <u>Thyssen, Inc. v. Calypso Shipping Corp. S.A.</u>, 310 F.3d 102, 104-05 (2d Cir. 2002) (quoting <u>Coca-Cola Bottling Co. v. Soft Drink and Brewery Workers Union Local, 812</u>, 242 F.3d 52, 57 (2d Cir. 2001)).

DISCUSSION

Defendant argues that "[b]y initiating this lawsuit, plaintiffs violated their obligation to pursue final and binding arbitration" and moves to compel arbitration and stay these proceedings pending arbitration. [Doc. #11-1 at 4].

1. Did the Parties Enter into a Valid Agreement to Arbitrate?

Plaintiffs do not challenge defendant's statutory authority to compel arbitration. Nor do they contend that they did not enter into the Employment Agreements. Rather, they argue that the Agreements should not be enforced because the choice of forum provision at paragraph 15 is unconscionable and the choice of law provision at paragraph 12 denies plaintiffs their rights to assert state law sexual harassment and retaliation claims under CFEPA and claims for unpaid commissions under the Connecticut Wage and Hour statutes.

"[T]he issue of unconscionability is an issue of substantive law which ordinarily must be construed by the law of the state which the parties chose...." Van Voorhies v. Land/home Fin. Servs., No. CV095031713S, 2010 WL 3961297, at *3 (Conn. Super. Ct. Sept. 3, 2010)(quoting Thomas v CM Securities, LLC, No. CV09035527S, 2010 WL 3038503, *8 (Ct. Super Ct. July 7, 2010)). Under Massachusetts law the party asserting that a contract is unconscionable has the burden of proof. NPS, LLC v. Minihane, 451 Mass. 417, 421, 886 N.E.2d 670, 674 (2008); see D'Antuone v. Serv. Rd. Corp., 789 F. Supp. 2d 308, 327 (D. Conn. 2011)("Under Connecticut law, the party that raises unconscionability as a defense to the enforcement of any contract

typically has the burden of showing that the contract is both procedurally and substantively unconscionable.")(emphasis added).

The question of whether an arbitration agreement is unconscionable is a case-by-case determination, looking at the "setting, purpose, and effect" of the agreement. Miller v. Cotter, 448 Mass. 671, 680, 863 N.E.2d 537, 545 (2007)(quoting Restatement (Second) of Contracts § 208, comment a (1981)).

> Under Massachusetts law, to prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise)."

Machado v. System4 LLC, 471 Mass. 204, 218, 28 N.E.3d 401, 414 (2015)(internal quotation marks and citations omitted)(emphasis added); see D'Antuono, 789 F. Supp. 2d at 327 ("Substantive unconsionability focuses on the 'content of the contract,' as distinguished from procedural unconscionability, which focuses on the 'process by which the allegedly offensive terms found their way into the agreement.'") (quoting Cheshire Mortgage Serv., Inc. v. Montes, 223 Conn. 80 n. 14 (1992)).

Plaintiffs do not argue that there was anything in the "setting" of the execution of the Agreements that was procedurally unconscionable. [Doc. #15 at 4-6]. Rather, plaintiffs argue that certain terms of the agreement, the "purpose and effect", are substantively unconscionable. Id.

9

Choice of Arbitration Forum

Plaintiffs first argue that compelling arbitration in Boston, over 150 miles from their homes, is "impractical, unaffordable and will add significant expenses," rendering it unconscionable. [Doc. #15 at 4-5; Ex. 1-3 ¶15].

In support of their position, plaintiffs cite to Van Voorhies v. Land/home Fin. Servs., where the Connecticut Superior Court found that the arbitration forum in California was substantially unconscionable. No. CV095031713S, 2010 WL 3961297, at *8 (Conn. Super. Sept. 3, 2010). In that case, plaintiff submitted an affidavit averring that he could not afford the costs associated with arbitrating a case in California rather than his home state of Connecticut, in light of sustained unemployment and modest liquid assets. Id. at *8. Here, plaintiffs have made no showing of financial duress or other hardship associated with arbitrating their claims in Boston. See Avionics Tech., Inc. v. Ulti-Mate Connector, Inc., No. CV106015858S, 2011 WL 1886578, at *5 (Conn. Super. Ct. Apr. 21, 2011)(decided after Van Voorhies, the court rejected plaintiff's argument that the arbitration and choice-of-law provisions are oppressive and unconscionable stating, "this argument...fails in the absence of any actual evidence that in the 21st century, the necessity of a flight to California represents any kind of exceptional hardship for a company doing business for this defendant...."); see also Bragel v. General Steel Corp., No. 05-2820, 2006 WL 2623931, at *5 (Mass. Super. Ct. Aug. 2, 2006) (Massachusetts

court finding that "[t]here is nothing inherently unreasonable about the choice of Colorado as the forum for arbitration; it is not so remote a location that it acts as a shield against liability as [plaintiff] argues. It is not unexpected that a business would require arbitration to take place in its home state; to the contrary, what business wouldn't chose its home state?"). Although travel to Boston may be inconvenient, it is not onerous, and plaintiffs have not made any showing for the Court to conclude otherwise. Accordingly, plaintiffs have failed to carry their burden of proof that the arbitration forum provision is unconscionable and should not be enforced. NPS, LLC, 451 Mass. at 421, 886 N.E.2d at 674 ("Having presented little evidence beyond his assertion that the contract as a whole was unconscionable, the defendant in this case has not sustained that burden.").

Choice of Law Provision

Plaintiffs next argue that the choice of law provision is unconscionable because application of Massachusetts law precludes them from asserting their state law claims under CFEPA and the Connecticut Wage and Hour statutes. [Doc. #15 at 5-6]. However, plaintiffs have not articulated how they would be prejudiced or precluded from seeking damages for unlawful discrimination/retaliation and for lost wages or commissions through arbitration. Massachusetts courts, like Connecticut, look to federal law for guidance in interpreting their state employment discrimination statutes. Massasoit Indus. Corp. v. Massachusetts

11

Comm'n Against Discrimination, 91 Mass. App. Ct. 208, 214, 73 N.E.3d 333, 340 n.6 (2017)("Massachusetts looks to Federal law to interpret the definition of disability under G. L. c. 151B, except in those situations in which the Supreme Judicial Court expressly departs from it."); Smith v. Mitre Corp., 949 F. Supp. 943, 946 (D. Mass. 1997)("In interpreting the Massachusetts employment discrimination laws, however, Massachusetts courts often look to, although they are not bound to follow, interpretations by federal courts of similar federal laws.")(citing cases); Payne v. PSC Indus. Outsourcing, Ltd. P'ship, 139 F. Supp. 3d 536, 544 (D. Conn. 2015)("[T]he Connecticut Supreme Court has noted that Connecticut state courts will 'look to federal law for guidance on interpreting state employment discrimination law,' as 'the analysis is the same under both.'")(quoting Craine v. Trinity College, 259 Conn. 625, 637 n. 6, 791 A.2d 518 (Conn. 2002)).

 The main object of a judicial proceeding is to recover damages for allegedly unlawful discrimination, relief that can be awarded through arbitration should plaintiffs prevail. Aside from a broad contention that "[a]rbitration agreements that prevent plaintiffs from vindicating their statutory rights in arbitration are invalid," [doc. #15 at 5], plaintiffs offered no analysis or compelling authority to show how the application of the choice of law provision will prejudice them or is unconscionable.  Accordingly, plaintiffs have failed to carry their burden of proof that the choice of law provision is unconscionable and should not be enforced.

2. <u>Do the Disputes at Issue Come Within the Scope of the Arbitration Agreement</u>?

The next question for the Court to determine is "whether the dispute at issue comes within the scope of the arbitration agreement." <u>In re Am. Exp. Fin. Advisors Sec. Litig.</u>, 672 F.3d at 128. As set forth above, all of plaintiffs' claims arise from their employment with IntePros. [Compl.; Doc. #15 Pl. Ex. 1, 2, 3 ¶15 ("Any dispute or claim arising out of or relating to the Employee's employment or any provision of this Agreement, whether based on contract or tort or otherwise, including, but not limited to claims of sexual harassment and claims of discrimination based on race, religion, national origin, gender, age or disability, shall be submitted to arbitration....")]. Plaintiffs do not dispute that their claims arise out of or relate to their employment with defendant. Accordingly, the Court finds that plaintiffs' claims come within the scope of the Agreements.

3. <u>Waiver</u>

Finally, plaintiffs argue that defendant waived its right to compel arbitration because it did not demand or compel arbitration until nineteen months after plaintiffs filed their claims with the CHRO. [Doc. #15 at 7-10].

The determination of whether a party has waived its right to arbitration requires consideration of three factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion

practice and discovery; and (3) proof of prejudice." Sutherland v. Ernst & Young, LLP, 600 F. App'x 6, 7–8 (2d Cir. 2015)(quoting Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith, 626 F.3d 156, 160 (2d Cir. 2010)). Our Court of Appeals "has recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay." Sutherland, 600 F. App'x at 8 (citing Thyssen, 310 F.3d at 105).

> Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense.

Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991). Our Appeals Court "has refused to find waiver in a number of cases where delay in trial proceedings was not accompanied by substantial motion practice or discovery." Sutherland, 600 F. App'x at 8 (quoting Thyssen, 310 F.3d at 105 (collecting cases)).

Defendant argues, and the Court agrees, that it "could not have invoked the arbitration provision while the case was pending before the CHRO." [Doc. #20 at 7 (citing Ferguson v. United Health Care, No. 3:08CV1389(MRK), 2008 WL 5246145 (D. Conn. 2008)]. The EEOC and CHRO are not bound by arbitration agreements. EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002); Ferguson, 2008 WL 5246145, *4 ("Since [defendant] could not have halted the [agency] proceedings once the agency decided to look into [plaintiff]'s complaint, it cannot be that [defendant] waived its rights under the Arbitration Policy for

14

failing to try to do so."); see also Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 16 (1st Cir. 2005) ("[A]n employer cannot waive its right to arbitration by failing to raise the arbitration defense with the EEOC or by failing to initiate arbitration during the pendency of the EEOC proceedings. The employer's failure to initiate arbitration during the pendency of such proceedings merely reflects a desire to avoid inefficiency and is not action inconsistent with a desire to arbitrate."). The Court finds that defendant did not waive its right to arbitrate by participating in the CHRO/EEOC hearing.

Similarly, defendant did not waive its right to arbitrate by seeking immediate injunctive relief and enforcement of plaintiff O'Meara's confidentiality and non-solicitation provisions in Massachusetts District Court. [Doc. #15 Ex. 1 ¶¶7-8]. Paragraph 15 of the Agreements states that, "[n]otwithstanding the aforementioned obligation to arbitrate, the Employer may sue in any court of competent jurisdiction for the Employee's violation of Section 7 and/or 8 of this Agreement." Id.  The Court finds that defendant's exercise of its rights under paragraphs 7, 8 and/or 15 of the Agreement does not constitute waiver.

Finally, plaintiffs argue that defendant waived its right to arbitration by waiting nineteen months before filing this motion to compel arbitration. On this record, plaintiffs have not shown prejudice. See PPG Indus., Inc. v. Webster Auto Parts Inc., 128 F.3d 103, 107 (2d Cir. 1997)("[A] party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing

party."); Sweater Bee By Banff, Ltd. v. Manhattan Indus., Inc., 754 F.2d 457, 461 (2d Cir. 1985) ("The rule of this circuit...is that the litigation of substantial issues going to the merits may constitute a waiver of arbitration."). Prejudice is defined as "inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." Doctor's Assoc., Inc. v. Distajo, 107 F.3d 126, 134 (2d Cir. 1997); see also Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 229-30 (2d Cir. 2001).

 Nor have the parties engaged in litigation on issues going to the merits of this case. Plaintiffs filed their law suit in Connecticut state court on October 16, 2016. After removal to the federal court on November 9, 2016, defendant did not file an answer to plaintiffs' claims on the merits; it responded to plaintiffs' complaint by filing the instant motion to enforce the Agreements to arbitrate. No discovery or motion practice was undertaken by either party during that period. Our Court of Appeals has "often stated the general rule that waiver of the right to arbitrate occurs when a party 'engages in protracted litigation that results in prejudice to the opposing party.'" Doctor's Assoc., 107 F.3d at 131 (quoting Cotton v. Sloane, 4 F.3d 176, 179 (2d Cir. 1993)). On this record, the Court finds that plaintiffs have not been prejudiced beyond the normal prejudice suffered by plaintiffs who do not wish to submit their claims to arbitration and who attempt to avoid doing so.

On this record, the Court concludes that defendant did not waive its right to invoke the arbitration provision of the Employment Agreements.

CONCLUSION

Accordingly, the Motion to Compel Arbitration and Stay Proceedings Pending Arbitration [**Doc. #11**] is **GRANTED**. This case is stayed and the parties are directed to proceed to arbitration. See 9 U.S.C. §3 (If the Court finds that an issue is arbitrable under a valid arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."); 9 U.S.C. §4 (If the Court finds a valid arbitration agreement, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."). **The Clerk will administratively close this file, subject to reopening by either party upon conclusion of the arbitration.**

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #22] on June 12, 2017, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at Bridgeport, Connecticut this 19th day of July 2017.

/s/
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE